UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RICHARD GROSS,

    Plaintiff,

vs.                                                          CASE NO. _____

BREVARD COUNTY SHERIFF JACK PARKER and     6:07-cv-1667-ORL-31 JAM
ARMOR CORRECTIONAL HEALTH SERVICES, INC.,

    Defendants.

_____/

## VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL

COMEs NOW Plaintiff, by and through undersigned Counsel, and files this Verified Complaint, which is divided into four categories of claims: first, the violations and injuries arising out of the denial by both Defendants to provide Mr. Gross with his prescribed medications for his serious medical condition while incarcerated as a pretrial detainee in the Brevard County jail; second, the violations and injuries arising out of the incarceration of the nonviolent Mr. Gross with a dangerously violent inmate, resulting in a severe attack on Mr. Gross; third, the violations and injuries arising out of the denial by both Defendants to provide Mr. Gross with medical treatment for the injuries from the attack; and, fourth, the violations and injuries arising out of the Sheriff's prolonged incarceration of Mr. Gross after his release was ordered by the Brevard County Court. Thus, Mr. Gross states:

### CATEGORY a. DENIAL OF PRESCRIBED MEDICATIONS

#### COUNT I. DELIBERATE INDIFFERENCE TO Medical NEEDS
#### against Both Defendants
#### 42 U.S.C. § 1983

1. Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, based on the federal civil rights violations alleged herein.

2. This action arises out of violations and injuries claimed to have occurred in the Middle District of Florida and venue is proper in this Court pursuant to 28 U.S.C. § 1391.

3. Plaintiff, Richard Gross, is a United States citizen and a resident of Orlando, Florida, who was 24 years of age at the time the actions alleged herein occurred.

4. Defendant Jack Parker is the Sheriff of Brevard County, and he is responsible for management and final policy-making for the Brevard County Jail. He is sued in his official capacity only.

5. Defendant, ARMOR CORRECTIONAL HEALTH SERVICES, INC. (hereinafter "Armor"), is a for-profit corporation that contracted by the Sheriff to provide medical services to jail inmates during the period from June 26, 2006, through August 12, 2006.

6. On or about July 26, 2006, Mr. Gross was arrested on a warrant for violation of probation for a reckless driving charge -- all of which actual or alleged infractions were completely nonviolent.

7. At or around 1:00 P.M. on July 26, 2006, Mr. Gross appeared before Judge McKibbin and informed the Court that he, Mr. Gross, suffered from the serious psychiatric condition of a bipolar disorder with severe bouts of mania, for which he is prescribed Seroquel and Lexapro ; that his serious medical needs required that he take medications as prescribed by his physician; and, that he had his medications and prescriptions with him at that time.

8. Judge McKibbin assured Mr. Gross' mother, Carol Clark, who was present in the courtroom, that Ms. Clark could provide jail personnel with Mr. Gross' medications and that Mr. Gross would receive his medications upon his arrival at the jail.

9. Thereafter, on July 26, 2006, Mr. Gross was incarcerated in the Brevard County jail as a pretrial detainee.

10. A little while later on July 26, 2006, when Mr. Gross' mother informed jail personnel of Judge McKibbin's assurance and attempted to provide jail personnel with Mr. Gross' medications, jail personnel refused to accept the medications.

11. Also on July 26, Mr. Gross informed Defendants' personnel of his medical condition and requested that he receive the medications prescribed for him.

12. Despite repeated requests to Defendants' personnel by Mr. Gross and his mother for Mr. Gross to be provided with his prescribed medications, Defendants' personnel ignored the requests.

13. After a sleepless and anxiety-ridden night, Mr. Gross was arraigned before Judge Clark the next day via CCTV at the jail, wherein Mr. Gross requested that Judge Clark order that he, Mr. Gross, receive his prescribed medications.

14. Judge Clark, over the CCTV, ordered the jail personnel present to provide Mr. Gross with his medications.

15. Despite Judge Clark's order, Defendant's personnel did not give Mr. Gross his medications that Defendants' knew Mr. Gross required.

16. Also on July 27, jail personnel informed Mr. Gross that because he was not receiving his medication, he would be incarcerated in the jail's plexiglass-walled mental health pod known as "the bubble."

17. Every day that Mr. Gross was without his medications, his serious medical condition worsened, including greatly exacerbated mania and sleep deprivation.

18. While in the bubble, Mr. Gross (like the other inmates of the bubble) was denied access to a toilet except at infrequent and sporadic occasions; and then, only after begging and pleading with jail personnel for access to the toilet.

19. Because jail personnel did not provide adequate access to the toilet, inmates in the bubble urinated and defecated in the sleeping/living area of the bubble every day that Mr. Gross was incarcerated in the bubble.

20. Jail personnel cleaned the bubble only two times a week while Mr. Gross was incarcerated in the bubble.

21. Like the other inmates of the bubble, Mr. Gross was denied soap to wash his hands after using the toilet, and was forced to eat his food with his hands because jail personnel denied the use of eating utensils.

22. Like the other inmates of the bubble, Mr. Gross was allowed to shower and brush his teeth only two times per week.

23. During the entire time Mr. Gross was incarcerated in the bubble, the bubble was brightly illuminated by fluorescent lighting 24 hours each day.

24. It was not until July 29, 2006, that jail personnel told Mr. Gross that he could have Doxepin as a substitute for Seroquel, or that he could have nothing at all; whereupon, Mr. Gross accepted the Doxepin.

25. Despite Mr. Gross' repeated requests for Lexapro, Defendants provided no Lexapro, nor any substitute for Lexapro, to Mr. Gross at any time during his incarceration, which did not end until August 12, 2006.

26. Because of Defendants' denial of medical care, (including prescribed medication, access to a physician, and medical treatment) for Mr. Gross' serious medical needs as described in this Count, Mr. Gross' medical bipolar conditions were exacerbated, resulting in severely raised levels of mania and anxiety.

27. At all times relevant, Defendants were acting under color of state law.

28. Mr. Gross, while a pretrial detainee at the Jail, has the right to due process under the Fourteenth Amendment of the Constitution of the United States to be provided adequate care by Defendants for his serious medical needs.

29. While acting under color of state law, Defendants violated Mr. Gross' Fourteenth Amendment right to due process by manifesting deliberate indifference to Mr. Gross' serious needs for medical care.

30. Defendants' deliberate indifference to Mr. Gross' serious needs for medical care is devoid of phenological or other legitimate merit.

31. Defendants' deliberate indifference to Mr. Gross' serious needs for medical care is a wanton and unnecessary infliction of pain and other injury against Mr. Gross.

32. Defendants have denied medical care to Mr. Gross with practices that are not reasonably related to legitimate phenological or other objectives.

33. Defendants' deliberate indifference to Mr. Gross' needs for medical care exhibits a conscious and callous indifference to Mr. Gross' serious medical needs and to Mr. Gross' rights to due process.

34. Defendants' degree of disregard for Mr. Gross' rights to adequate medical care for serious medical needs offend established standards of decency and are antithetical to a civilized society.

35. The Sheriff's denial of medical care for Mr. Gross is due to the Sheriff's policy or custom to permit, perpetrate, condone, and perpetuate the violation of Mr. Gross' and other inmates' right to medical care for serious medical needs.

36. The Sheriff's denial of medical care for Mr. Gross is due to the Sheriff's policy or custom of deliberate indifference to Mr. Gross' and other inmates' serious medical needs and to Mr. Gross' right to due process.

37. Additionally or alternatively, the Sheriff is negligent in training and/or supervising Armor and the Sheriff's employees who participated in the violation of Mr. Gross' right to medical care because the Sheriff failed to adequately train and/or supervise its employees and Armor to handle recurring situations presenting an obvious potential for such violation.

38. In light of the duties of protecting Jail inmates against denial of medical care for serious medical needs, the need for more or different training and/or supervision is and has been so obvious that the Sheriff is deliberately indifferent to the need for such training.

39. As a direct and proximate result of Defendants' deliberate and callous indifference to Mr. Gross' need for medical care for serious medical needs as described in this Count, Mr. Gross has been injured and has suffered damages, including severe physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, costs, and attorney fees.

40. Mr. Gross demands all relief that is just and equitable from each Defendant, jointly and severally, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

41. Mr. Gross demands punitive damages from Defendant Armor.

42. In the event of default by one or both Defendants, Mr. Gross demands $500,000.00 in compensatory damages, plus costs and attorney fees, as liquidated damages from each defaulting Defendant, for this Count only.

### COUNT II. SIMPLE NEGLIGENCE FOR DEPRIVING ACCESS TO MEDICAL CARE
### against Both Defendants

43. Mr. Gross realleges Paragraphs 1 through 26, and states additionally or alternatively:.

44. This Court has supplemental jurisdiction of the subject matter of this claim by virtue of 28 U.S.C. § 1367, as to all claims arising under the laws and Constitution of the State of Florida that are so related to the claims of which this Court has original jurisdiction and which form part of the same case or controversy.

45. Mr. Gross has complied with the administrative requirements of Fla. Stat. § 768.28 by submitting the required notices to the Sheriff and the Department of Insurance in a timely manner more than six months before the filing of this Verified Complaint.

46. At all times while Mr. Gross was in the jail, Defendants owed Mr. Gross a duty to provide Mr. Gross with access to adequate care for Mr. Gross' medical needs.

47. Defendants breached their duty to provide adequate access to medical care, including proper medication, to Mr. Gross.

48. It was reasonably foreseeable that if Defendants breached their duty to provide such access and/or medication, Mr. Gross would be harmed.

49. Defendants' breach of duty was the proximate cause of harm to Mr. Gross, including physical and other injuries.

50. Because of Defendants' negligence regarding Mr. Gross, Mr. Gross has been injured and has suffered damages, including physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, and costs of this action.

51. Mr. Gross demands all relief that is just and equitable from both Defendants, jointly and severally, including compensatory damages and the taxable costs of this action.

**CATEGORY B. EXPOSURE TO DANGEROUSLY VIOLENT INMATE**

### COUNT III. UNREASONABLy Dangerous SEIZURE
### against the Sheriff only
### 42 U.S.C. § 1983.

52. Mr. Gross realleges Paragraphs 1 through 6, 9, and 16; and, states additionally:

53. Defendants admitted that jail personnel were to evaluate Mr. Gross on July 31, 2006, so that he could be moved out of the bubble and into the general population of the jail, but the evaluation was not performed and Mr. Gross was required to remain in the bubble.

54. During the daytime hours of July 31, 2006, a man in Mr. Gross' bubble cell, Eric Alsup, attacked another man in Mr. Gross' cell.

55. Jail personnel knew that Alsup was in jail on charges of attempted 1st degree murder, aggravated battery with a weapon and false imprisonment; and, that Alsup was violent, had severe psychiatric problems; e.g., schizophrenic and delusional; refused medication for his psychiatric problems, and was a serious danger of violence to other inmates.

56. When Alsup attacked Mr. Gross' cellmate, Mr. Gross activated an emergency pager for the guards and informed the guards that Alsup was a dangerously violent attacker, but the guards merely relocated the inmate attacked by Alsup, and left Alsup in the cell with Mr. Gross.

57. At or about 10:45 P.M. on the night of July 31, an unprovoked Alsup suddenly attacked Mr. Gross while Mr. Gross was asleep and defenseless.

58. Alsup began the attack by striking Mr. Gross twice on the right temple, then threw a cup of urine in Mr. Gross' face, temporarily blinding Mr. Gross and causing him to ingest some of the urine.

59. Alsup then placed Mr. Gross in a chokehold and punched him in the right eye and on the right side of his head between 20 and 30 times.

60. Alsup's attack was stopped by jail personnel only after Mr. Gross finally was able to activate the emergency pager.

61. Under the Fourth Amendment of the United States Constitution, and as applied to the States by the Fourteenth Amendment, Mr. Gross has a constitutionally protected right to be free from unreasonable seizures.

62. The Sheriff violated Mr. Gross' Fourth Amendment right to be free from unreasonable seizure by incarcerating Mr. Gross in a cell with another inmate who was known to be dangerously violent to Mr. Gross.

63. The Sheriff violated Mr. Gross' Fourth Amendment right to be free from unreasonable seizure because the Sheriff arbitrarily and capriciously incarcerated Mr. Gross with another inmate who was known to be dangerously violent to Mr. Gross.

64. The Sheriff's incarceration of Mr. Gross with another inmate who was known to be dangerously violent to Mr. Gross was due to the Sheriff's policy or custom to permit, perpetrate, condone, and perpetuate the violation of Mr. Gross' and other inmates' right to be free from such an unreasonably dangerous seizure.

65. The Sheriff's incarceration of Mr. Gross with another inmate who was known to be dangerously violent to Mr. Gross was due to the Sheriff's policy or custom of deliberate indifference to Mr. Gross' and other inmates' right to be free from unreasonably dangerous seizure.

66. Additionally or alternatively, the Sheriff is negligent in training and/or supervising its employees who participated in the violation of Mr. Gross' right to be free of unreasonably

dangerous seizure because the Sheriff failed to adequately train and/or supervise its employees to handle recurring situations presenting an obvious potential for such violation.

67. In light of the duties of protecting people against unreasonably dangerous seizure, the need for more or different training and/or supervision is and has been so obvious that the Sheriff is deliberately indifferent to the need for such training and/or supervision.

68. As a direct and proximate result of the Sheriff's deliberate and callous indifference to Mr. Gross' right to be free from unreasonably dangerous seizure, Mr. Gross has been injured and has suffered damages, including physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, loss of liberty, costs, and attorney fees.

69. Mr. Gross demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

**COUNT IV. Denial of DUE PROCESS**
**against the Sheriff only**
**42 U.S.C. § 1983.**

70. Mr. Gross realleges Paragraphs 1 through 6, 9, 16, and 53 through 60; and, states additionally or alternatively:

71. Under the Fourteenth Amendment of the United States Constitution, Mr. Gross has a constitutionally protected right to due process.

72. The Sheriff violated Mr. Gross' Fourteenth Amendment right to due process by incarcerating Mr. Gross with another inmate who was known to be dangerously violent to Mr. Gross.

73. The Sheriff violated Mr. Gross' right to due process because the Sheriff arbitrarily and capriciously incarcerated Mr. Gross with another inmate who was known to be dangerously violent to Mr. Gross beyond the release time ordered by the Court.

74. The Sheriff's denial of due process for Mr. Gross was due to the Sheriff's policy or custom to permit, perpetrate, condone, and perpetuate the violation of Mr. Gross' and other inmates' right to due process.

75. The Sheriff's denial of due process for Mr. Gross was due to the Sheriff's policy or custom of deliberate indifference to Mr. Gross' and other inmates' right to due process.

76. Additionally or alternatively, the Sheriff is negligent in training and/or supervising its employees who participated in the violation of Mr. Gross' right to due process because the Sheriff failed to adequately train and/or supervise its employees to handle recurring situations presenting an obvious potential for such violation.

77. In light of the duties of protecting people against the denial of due process, the need for more or different training and/or supervision is and has been so obvious that the Sheriff is deliberately indifferent to the need for such training and/or supervision.

78. As a direct and proximate result of the Sheriff's deliberate and callous indifference to Mr. Gross' right to due process, Mr. Gross has been grievously injured and has suffered damages, including physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, loss of liberty, costs, and attorney fees.

79. Mr. Gross demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

### COUNT V. Negligent Endangerment
### against Sheriff only

80. Mr. Gross realleges Paragraphs 1 through 6, 9, 16, 44 through 45, and 53 through 60; and, states additionally or alternatively:

81. The Sheriff had a duty to protect Mr. Gross and similarly nonviolent inmates from battery by dangerously violent and unmedicated inmates such as Alsup because the Sheriff affirmatively negligently acted to create Mr. Gross' zone of danger, and/or rendered Mr. Gross more vulnerable to the danger.

82. The Sheriff breached that duty to Mr. Gross because the Sheriff knew or should known of the danger posed by Alsup to Mr. Gross, yet neglected to protect Mr. Gross from Alsup.

83. It was foreseeable that the breach of that duty would harm Mr. Gross.

84. The Sheriff's breach of that duty was the direct and proximate cause of the battery of Mr. Gross by Alsup.

85. Because of the Sheriff's negligent endangerment of Mr. Gross, Mr. Gross has been injured and has suffered damages, including physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, loss of liberty, and the costs of this action.

86. Mr. Gross demands all relief that is just and equitable, including compensatory damages and the taxable costs of this action.

### CATEGORY C. DENIAL OF MEDICAL TREATMENT FOR ATTACK
### COUNT VI. DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
#### against Both Defendants
#### 42 U.S.C. § 1983

87. Mr. Gross realleges Paragraphs 1 through 6, 9, 16, and 57 through 60; and, states additionally:

88. As a result of the beating, Mr. Gross' suffered serious injury, including that he suffered enormous knots on the side of his head, easily the size of half tennis balls; his right eye filled up with blood, to the point that no white was showing; and, for about 4 days after the beating, he could not make out anything but colors with his right eye. (See photograph*s* attached hereto of Mr. Gross, taken by jail personnel on August 12, 2006 -- 12 days after the attack.)

89. Because of being splashed by Alsup in the eyes and mouth with urine, Mr. Gross was deathly afraid of contracting HIV, hepatitis, and other (potentially deadly) diseases.

90. Despite Mr. Gross' requests, Defendants did not provide Mr. Gross with access to a physician for the mental or physical trauma caused by the beating and the splashing of the urine into his mouth and eyes.

91. Because of Defendants restrictions on Mr. Gross, he was not able to speak to his family to report the attack and his injuries/medical problems, or to partially alleviate his anxiety, until August 2, 2006.

92. Despite Mr. Gross' pleas, Defendants refused to provide Mr. Gross with a medical screening for any disease he might have contracted from the urine being thrown in his mouth and eyes, and never provided him access to a physician for his head and eye injuries.

93. Because of Defendants' denial of medical care, (including medication, access to a physician, and/or medical screening and treatment) for Mr. Gross' serious medical needs as described in this Count, Mr. Gross suffered from enormously more pain, disfigurement, fear, anxiety, and other problems than he would have suffered otherwise.

94. At all times relevant, Defendants were acting under color of state law.

95. Mr. Gross, while a pretrial detainee at the Jail, has the right to due process under the Fourteenth Amendment of the Constitution of the United States to be provided adequate care by Defendants for his serious medical needs.

96. While acting under color of state law, Defendants violated Mr. Gross' Fourteenth Amendment right to due process by manifesting deliberate indifference to Mr. Gross' serious needs for medical care arising out of Alsup's attack.

97. Defendants' deliberate indifference to Mr. Gross' serious needs for medical care is devoid of phenological or other legitimate merit.

98. Defendants' deliberate indifference to Mr. Gross' serious needs for medical care is a wanton and unnecessary infliction of pain and other injury against Mr. Gross.

99. Defendants have denied medical care to Mr. Gross with practices that are not reasonably related to legitimate phenological or other objectives.

100. Defendants' deliberate indifference to Mr. Gross' needs for medical care exhibits a conscious and callous indifference to Mr. Gross' serious medical needs and to Mr. Gross' rights to due process.

101. Defendants' degree of disregard for Mr. Gross' rights to adequate medical care for serious medical needs offend established standards of decency and are antithetical to a civilized society.

102. The Sheriff's denial of medical care for Mr. Gross is due to the Sheriff's policy or custom to permit, perpetrate, condone, and perpetuate the violation of Mr. Gross' and other inmates' right to medical care for serious medical needs.

103. The Sheriff's denial of medical care for Mr. Gross is due to the Sheriff's policy or custom of deliberate indifference to Mr. Gross' and other inmates' serious medical needs and to Mr. Gross' right to due process.

104. Additionally or alternatively, the Sheriff is negligent in training and/or supervising its employees and Armor who participated in the violation of Mr. Gross' right to medical care because the Sheriff failed to adequately train and/or supervise its employees and Armor to handle recurring situations presenting an obvious potential for such violation.

105. In light of the duties of protecting Jail inmates against denial of medical care for serious medical needs, the need for more or different training and/or supervision is and has been so obvious that the Sheriff is deliberately indifferent to the need for such training and/or supervision.

106. As a direct and proximate result of Defendants' deliberate and callous indifference to Mr. Gross' need for medical care for serious medical needs as described in this Count, Mr. Gross has been injured and has suffered damages, including severe physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, costs, and attorney fees.

107. Mr. Gross demands all relief that is just and equitable from each Defendant, jointly and severally, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

108. Mr. Gross demands punitive damages from Defendant Armor.

109. In the event of default by one or both Defendants, Mr. Gross demands $2,000,000.00 in compensatory damages, plus costs and attorney fees, as liquidated damages from each defaulting Defendant, for this Count only.

### COUNT VII. SIMPLE NEGLIGENCE FOR DEPRIVING ACCESS TO MEDICAL CARE
**against Both Defendants**

110.  Mr. Gross realleges Paragraphs 1 through 6, 9, 16, 44 through 45, 57 through 60, and 88 through 93; and, states additionally or alternatively:.

111.  At all times while Mr. Gross was in the jail, Defendants owed Mr. Gross a duty to provide Mr. Gross with access to proper care for Mr. Gross' medical needs arising out of Alsup's attack.

112.  Defendants breached their duty to provide adequate access to medical care, including medical screening, to Mr. Gross.

113.  It was reasonably foreseeable that if Defendants breached their duty to provide such access, Mr. Gross would be harmed.

114.  Defendants' breach of duty was the proximate cause of post-battery harm to Mr. Gross, including physical pain and suffering.

115.  Because of Defendants' negligence regarding Mr. Gross, Mr. Gross has been injured and has suffered damages, including physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, and costs of this action.

116.  Mr. Gross demands all relief that is just and equitable from both Defendants, jointly and severally, including compensatory damages and the taxable costs of this action.

### CATEGORY D. PROLONGED INCARCERATION

### COUNT VIII. PROLONGED UNREASONABLE SEIZURE
**against the Sheriff only**
**42 U.S.C. § 1983.**

117.  Mr. Gross realleges Paragraphs 1 through 6 and Paragraph 9, and, states additionally:

118. On August 11, 2006, the Brevard County Court ordered that Mr. Gross be released immediately upon a signature bond, which bond Mr. Gross was ready, willing, and able to execute immediately.

119. The Sheriff did not release Mr. Gross until August 12, 2006.

120. Under the Fourth Amendment of the United States Constitution, and as applied to the States by the Fourteenth Amendment, Mr. Gross has a constitutionally protected right to be free from unreasonable seizures.

121. The Sheriff violated Mr. Gross' Fourth Amendment right to be free from unreasonable seizure by failing to release Mr. Gross as ordered by the Court.

122. The Sheriff violated Mr. Gross' Fourth Amendment right to be free from unreasonable seizure because the Sheriff arbitrarily and capriciously kept Mr. Gross incarcerated for an extra day.

123. The Sheriff's incarceration of Mr. Gross beyond the release time ordered by the Court was due to the Sheriff's policy or custom to permit, perpetrate, condone, and perpetuate the violation of Mr. Gross' and other inmates' right to be free from such unreasonable seizure.

124. The Sheriff's excessive incarceration of Mr. Gross was due to the Sheriff's policy or custom of deliberate indifference to Mr. Gross' and other inmates' right to be free from such unreasonable seizure.

125. Additionally or alternatively, the Sheriff is negligent in training and/or supervising its employees who participated in the violation of Mr. Gross' right to be free of unreasonable seizure because the Sheriff failed to adequately train and/or supervise its employees to handle recurring situations presenting an obvious potential for such violation.

126. In light of the duties of protecting people against unreasonable seizure, the need for more or different training and/or supervision is and has been so obvious that the Sheriff is deliberately indifferent to the need for such training and/or supervision.

127. As a direct and proximate result of the Sheriff's deliberate and callous indifference to Mr. Gross' right to be free from unreasonable seizure, Mr. Gross has been injured and has suffered damages, including physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, loss of liberty, costs, and attorney fees.

128. Mr. Gross demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

### COUNT IX. Denial of DUE PROCESS
### against the Sheriff only
### 42 U.S.C. § 1983.

129. Mr. Gross realleges Paragraphs 1 through 6, 9, and 118 through 119; and, states additionally or alternatively:

130. Under the Fourteenth Amendment of the United States Constitution, Mr. Gross has a constitutionally protected right to due process.

131. The Sheriff violated Mr. Gross' Fourteenth Amendment right to due process by incarcerating Mr. Gross beyond the release time ordered by the Court.

132. The Sheriff violated Mr. Gross' right to due process because the Sheriff arbitrarily and capriciously incarcerated Mr. Gross beyond the release time ordered by the Court.

133. The Sheriff's denial of due process for Mr. Gross was due to the Sheriff's policy or custom to permit, perpetrate, condone, and perpetuate the violation of Mr. Gross' and other inmates' right to due process.

134. The Sheriff's denial of due process for Mr. Gross was due to the Sheriff's policy or custom of deliberate indifference to Mr. Gross' and other inmates' right to due process.

135. Additionally or alternatively, the Sheriff is negligent in training and/or supervising its employees who participated in the violation of Mr. Gross' right to due process because the Sheriff failed to train and/or supervise its employees to handle recurring situations presenting an obvious potential for such violation.

136. In light of the duties of protecting people against the denial of due process, the need for more or different training and/or supervision is and has been so obvious that the Sheriff is deliberately indifferent to the need for such training and/or supervision.

137. As a direct and proximate result of the Sheriff's deliberate and callous indifference to Mr. Gross' right to due process, Mr. Gross has been injured and has suffered damages, including physical pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, loss of liberty, costs, and attorney fees.

138. Mr. Gross demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

## COUNT X. FALSE IMPRISONMENT
### against the Sheriff only

139. Mr. Gross realleges Paragraphs 1 through 6, 9, 118 through 119, and 44 through 45; and, states additionally or alternatively:

140. When the Court ordered Mr. Gross to be released on a signature bond, the Sheriff no longer had the legal authority to imprison Mr. Gross for any time beyond that reasonably required to allow Mr. Gross to execute the signature bond.

141. Mr. Gross was falsely imprisoned by the Sheriff for a day.

142. Because of the Sheriff's false imprisonment of Mr. Gross, Mr. Gross has been injured and has suffered damages, including pain and suffering, severe mental anguish and emotional distress, loss of capacity to enjoy life, loss of liberty, and the costs of this action.

143. Mr. Gross demands all relief that is just and equitable, including compensatory damages and the taxable costs of this action.

## DEMAND FOR JURY TRIAL

Mr. Gross demands trial by jury on all issues so triable.

### Verification

Pursuant to Florida Statute S 92.525 and under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in Paragraphs 3, 6 through 26, 39 through 41, 50 through 51, 53 through 60, 68 through 69, 78 through 79, 85 through 86, 88 through 93, 106 through 109, 115 through 116, 118 through 119, 127 through 128, 137 through 138, and 142 through 143 of the document are true and correct.

Signed and Dated this 12th day of October, 2007, by:

_____
Richard Gross

Respectfully submitted by:

Mark E. Tietig, Trial Counsel
Fla. Bar No. 105465
Tietig & Tietig, P.A.
6065 South Tropical Trail
Merritt Island, FL 32952
(321) 452-9944
Facsimile: (321) 452-8942
mt@tietig.com
Attorney for Plaintiff Richard Gross