**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD GROSS,**

            **Plaintiff,**

**-vs-**                                           **Case No. 6:07-cv-1667-Orl-31GJK**

**JACK PARKER and ARMOR**
**CORRECTIONAL HEALTH SERVICES,**
**INC.,**

            **Defendants.**

_____

# ORDER

This matter came before the Court without oral argument upon consideration of Defendants', Armor Correctional Health Services, Inc. ("Armor") and Sheriff Jack Parker ("Sheriff Parker") (collectively, "Defendants"), Motions for Summary Judgment (Docs. 49 and 52), Sheriff Parker's Notice of Supplemental Authority (Doc. 60), and Plaintiff's, Richard Gross ("Plaintiff"), Responses in Opposition to the Motions for Summary Judgment (Docs. 65 and 66).

**I. Overview**

    **A. Procedural Posture**

Plaintiff brings this 42 U.S.C. § 1983 ("§ 1983") action[1] alleging, *inter alia*, that Defendants violated his constitutional rights while he was incarcerated as a pre-trial detainee at the Brevard County Detention Center. Specifically, Count I of Plaintiff's Second Amended Complaint alleges that Defendants were deliberately indifferent to Plaintiff's medical needs by denying

---

[1]Plaintiff also brings various state law claims as discussed further, *infra*.

Plaintiff certain prescription medications during his incarceration (Doc. 33 at 1-7). Count II alleges that Sheriff Parker was negligent in depriving Plaintiff of certain prescription medications during his incarceration. Counts III and IV allege that Sheriff Parker incarcerated Plaintiff in a cell with another inmate whom Sheriff Parker knew to be dangerously violent, thus violating Plaintiff's right to be free from an unreasonable seizure (Count III) and right to due process (Count IV) (Doc. 33 at 7-9 and 10-11). Count V alleges that Sheriff Parker was negligent in placing Plaintiff in a cell with another inmate whom Sheriff Parker knew to be dangerously violent (Doc. 33 at 11). Count VI alleges that Defendants were deliberately indifferent to Plaintiff's medical needs by denying Plaintiff access to medical care after he was attacked by one of his cellmates (Doc. 33 at 13-14). Similarly, Count VII alleges that Sheriff Parker was negligent in failing to provide Plaintiff with access to medical care after he was attacked by one of his cellmates (Doc. 33 at 15). Counts VIII and IX allege that Sheriff Parker failed to immediately release Plaintiff following a court order that Plaintiff be released upon a signature bond, thus violating Plaintiff's right to be free from an unreasonable seizure (Count VIII) and right to due process (Count IX) (Doc. 33 at 15-18). Similarly, Count X alleges that Sheriff Parker falsely arrested Plaintiff by failing to immediately release Plaintiff after court order (Doc. 33 at 18). Count XI alleges that Defendants negligently inflicted emotional distress upon Plaintiff by failing to provide sanitary and otherwise acceptable conditions of incarceration (Doc. 33 at 18-19). Finally, Count XII alleges that Defendants negligently inflicted emotional distress upon Plaintiff by exposing him to attack by a cellmate (Doc. 33 at 19-20).

Defendants have moved for summary judgment on all counts in the Second Amended Complaint. Plaintiff has "withdraw[n]" Counts I and II "because he is unable to adduce sufficient

evidence to withstand summary judgment on those claims" (Docs. 65 and 66 at 13 and 17). Accordingly, Defendants are entitled to a judgment as a matter of law on Counts I and II. The Court addresses Defendants' Motions for Summary Judgment with respect to all remaining counts, *infra*.

For the sake of clarity, the Court has organized the instant Order according to Plaintiff's theories of liability: (a) Plaintiff was housed in a cell with, and later attacked by, another inmate whom Sheriff Parker knew was dangerously violent (Counts III, IV, V, and XII); (b) Plaintiff was denied access to adequate medical care after he was attacked by one of his cellmates (Counts VI and VII); (c) Plaintiff's release from jail was unreasonably delayed after he was ordered to be released (Counts VIII, IX, and X); and (d) Plaintiff was exposed to unsanitary and otherwise unacceptable conditions while incarcerated at the jail's mental health pod known as the "bubble" (Count XI).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The parties agree that Florida substantive law is controlling with respect to Plaintiff's state law claims.

**B. Parties**

Defendant Sheriff Parker is the duly elected sheriff of Brevard County, Florida, and is the government official who is responsible for the Brevard County Detention Center. Plaintiff has sued Sheriff Parker in his official capacity only.

Defendant Armor Correctional Health Services, Inc. is a private entity that provides medical, dental, and mental health care services to prisoners. Although neither party has provided the Court with Armor's contract with the Brevard County or specified the exact services that Armor provides at the Brevard County Detention Center, Plaintiff has alleged, and Armor has

admitted, that it "contracted with the Sheriff, and acted as the Sheriff's agent, to provide medical services to...jail inmates during the period from June 26, 2006, through August 12, 2006" (Docs. 33, ¶ 5 and 36, ¶ 5).

## II. Factual Background

For approximately seventeen days (17), from July 26, 2006 through August 11, 2006, Plaintiff was incarcerated at the Brevard County Detention Center (Doc. 63-4, ¶¶ 2, 29-30). After being administered a mental health screening on the morning of July 27, 2006, Plaintiff was transferred out of the general jail population and placed in a plexiglass-enclosed cell referred to as the "bubble" with other mentally ill inmates (Docs. 52-4 at 52 and 63-4, ¶ 4).

### a. Plaintiff is Attacked in the "Bubble" by Another Inmate

In the evening of July 31, 2006, Plaintiff was attacked in the bubble by another inmate, Eric Alsup ("Alsup"). According to Plaintiff, he was asleep and defenseless when Alsup suddenly began striking him in the face and temple (Doc. 63-4, ¶¶ 23-24). Alsup then threw a cup of urine in Plaintiff's face, placed Plaintiff in a chokehold, and proceeded to punch Plaintiff in the right eye and head some twenty or thirty times (Doc. 63-4, ¶ 25). Jail personnel arrived after Plaintiff was able to activate an emergency pager on the wall of the cell (Doc. 63-4, ¶ 26).

Alsup was in the Brevard County Detention Center on charges of attempted murder with a firearm arising out of a domestic violence incident (Doc. 52-20 at 38). Prior to attacking Plaintiff, Alsup was involved in approximately five other incidents at the jail, including at least two other altercations, and was once observed eating his own feces (Docs. 52-6 and 63-4, ¶ 15). One such altercation occurred on the morning of July 31, 2006 – approximately twelve hours before Alsup attacked Plaintiff – when Alsup attacked another inmate, a Mr. Austin, in the bubble (Doc. 63-4, ¶

18). However, rather than removing Alsup from the bubble, jail personnel instead relocated Mr. Austin, thus leaving Alsup in the bubble with Plaintiff and other inmates (Doc. 63-4, ¶ 20). While Sheriff Parker's personnel asked Plaintiff, immediately after the attack on Mr. Austin, whether Alsup had threatened Plaintiff, Plaintiff told them that Alsup had not threatened Plaintiff (Doc. 63-4, ¶ 21). However, because the personnel had made the inquiry to Plaintiff in Alsup's presence, Plaintiff avers that he "was very scared and too afraid to say anything against Alsup in his presence for fear that [Alsup] would attack" him (Doc. 63-4, ¶ 21). Plaintiff did not file any grievance – informal or otherwise – with jail personnel prior to Alsup's attack on Plaintiff. Plaintiff also testified at his deposition that there were not any problems between him and Alsup prior to the attack on Plaintiff (Doc. 52-16 at 67-68).

According to Plaintiff, Armor personnel had been unable to get Alsup to take his medication and Alsup had grown increasingly more mentally ill prior to the attacks on Mr. Austin and Plaintiff (Doc. 63-4, ¶ 16). The assistant jail administrator, Major Darrell Hibbs, testified that Alsup was classified a "higher risk medium security inmate" (Doc. 52-20 at 38). However, Major Hibbs also noted that "fights happen every day at the jail," and Alsup was not classified as a maximum security inmate because, *inter alia*, he was not a "violent risk to [jail] staff" (Doc. 52-20 at 39).

### b. Plaintiff's Medical Care Following the Attack

As a result of Alsup's attack, Plaintiff claims to have suffered "serious injury, including enormous knots on the side of [his] head," that his "right eye filled up with blood, to the point that no white was showing," and that for about four days after the attack, Plaintiff "could not make out anything but colors with [his] right eye" (Doc. 63-4, ¶ 27). Notwithstanding these averments,

Plaintiff provides no evidence as to the extent of medical care he received – or did not receive – following the attack.

According to Armor's "Urgent Care Medical Report," Plaintiff was seen by Armor's medical personnel the evening of the attack (Doc. 52-5 at 13). The medical report indicates that Plaintiff had swelling to his right eye, but no bruising; and contrary to Plaintiff's affidavit, Plaintiff had reported no change in vision (Doc. 52-5 at 13). Furthermore, Plaintiff reported no dizziness, his gait was steady, and his hand grips were "strong /equal" (Doc. 52-5 at 13). Plaintiff was prescribed 650 milligrams of Tylenol, to be taken twice daily, for three days and was also provided an ice pack, with follow-up care "as needed" (Doc. 52-5 at 13). Plaintiff took the Tylenol for the first two days, both in the morning and in the evening, but apparently missed his morning dose (as well as perhaps his evening dose), on the third day (Doc. 52-17 at 41-42).

On August 8, 2006, Plaintiff underwent a subsequent health assessment by one of Armor's advanced registered nurses (Doc. 50-2 at 13). Plaintiff complained about his right eye and the nurse noted a conjunctival hemorrhage with a healing contusion (Doc. 50-2 at 13). Plaintiff also complained about the urine which had been thrown in his face and eyes, and indicated that he had nasal congestion and a scratchy throat (Doc. 50-2 at 13). Plaintiff was referred to health counseling regarding the fact that people do not contract hepatitis or HIV from exposure to urine and was prescribed Sudafed for his nasal congestion (Doc. 50-2 at 14). Finally, Plaintiff received a final health assessment by Armor personnel on August 10, 2006, which involved standard tuberculosis screening (Doc. 50-2 at 15).

Both Defendants have proffered expert medical testimony indicating that the care Plaintiff received following the attack by Alsup was appropriate and adequate and that neither Defendant

was deliberately indifferent to Plaintiff's medical needs (Docs. 49-2, and 52-10). Plaintiff has not offered any expert medical testimony.

### c. Plaintiff's Release from Jail Was Delayed for 23 Hours

As noted above, Plaintiff was incarcerated at the jail for about seventeen days (Doc. 63-4, ¶¶ 2, 29-30). He was released on August 11, 2007, at approximately 2:55 p.m. (Doc. 52-3 at 46). Plaintiff's girlfriend executed a signature bond for Plaintiff's release which was signed and filed in open court at approximately 3:30 p.m. on August 10, 2006 (Doc. 63-3 at 1). Neither party, however, has presented any evidence indicating when jail personnel received notice of the bond or an order[2] from the Brevard County Circuit Court ordering Plaintiff's release. Plaintiff swears, however, that he made repeated requests to jail personnel for his release on August 10, 2006, but that they denied the requests (Doc. 63-4, ¶ 30). As a result, Plaintiff was released approximately twenty-three (23) hours after the signature bond was filed with the court.

### d. Conditions of Incarceration

Plaintiff was confined in the bubble for only a portion of his incarceration at the Brevard County Detention Center, from July 27, 2006 through August 2, 2006 (Doc. 52-5 at 98-100 and 112). According to Plaintiff, the conditions inside the plexiglass-walled bubble were atrocious. Because jail personnel did not provide inmates with adequate access to the toilet, inmates urinated and defecated on the floor (Doc. 63-4, ¶ 6). However, the bubble was only cleaned twice a week and the cleaning treatments were substantially incomplete, leaving a "residue of excrement coating

---

[2] Indeed, other than a "Defendant Advisement Form" which includes a check-box for a signature bond, Plaintiff has failed to produce an actual order from the court ordering Plaintiff's release.

the walls and other surfaces" (Doc. 63-4, ¶ 8). Due to overcrowding, inmates within the bubble were forced to sleep on thin mats on the floor and often came into contact with the urine and excrement on the floor (Doc. 63-4, ¶¶ 6-7). Furthermore, Plaintiff was denied access to soap after using the bathroom facilities because the soap had run out and was never replaced during Plaintiff's confinement in the bubble (Doc. 63-4, ¶ 10). Notwithstanding the lack of soap, Plaintiff and other inmates were forced to eat their food with their bare hands and were not permitted to use utensils (Doc. 63-4, ¶ 11). Accordingly, Plaintiff avers that he was forced to ingest harmful bacteria and other substances, including his "own excrement and that of other inmates" (Doc. 63-4, ¶ 11). Plaintiff was also permitted to shower and brush his teeth only twice per week (Doc. 63-4, ¶ 12). Finally, during the entire time Plaintiff was incarcerated in the bubble, the bubble was "brightly illuminated by fluorescent lighting 24 hours each day" (Doc. 63-4, ¶ 13).

In his Motion for Summary Judgment, Sheriff Parker does not directly address Plaintiff's account of the conditions within the bubble. However, Major Hibbs testified during his deposition that inmates within the bubble have regular access, as needed and within the discretion of jail personnel,[3] to the bathroom facilities (Doc. 52-20 at 43-46). Major Hibbs also testified that the soap within the bathroom facilities was, or at least could be, regularly replenished if an inmate informed jail personnel (Doc. 52-20 at 48-49). Furthermore, in addition to the regular, twice per week cleaning of the bubble, Major Hibbs indicated that the bubble would be cleaned anytime

---

[3] More specifically, inmates may either ask jail personnel, who visit the bubble every fifteen minutes when one of the inmates within the bubble is on fifteen minute watch, to use the bathroom, or inmates may use the intercom at any time to ask jail personnel whether they can use the bathroom (Doc. 52-20 at 43-46). Ultimately, however, access to the bathroom appears to be within the discretion of jail personnel.

there was urine found within the bubble (such as after the incident involving inmate Alsup) (Doc. 52-20 at 50) and stated that "[m]ost of the time, there's hardly anything in [the bubble]" (Doc. 52-20 at 51). Major Hibbs also testified that the floor and walls of the bubble are cleaned with brushes, sponges, disinfectants, mops and brooms (Doc. 52-20 at 50-51).

## III. Standard of Review

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F.Supp.2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*,

770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**IV. Analysis**

    **A. Counts Pertaining to the Attack by Another Inmate in the Bubble**

        1. **Counts III and IV Against Defendant Sheriff Parker**

Counts III and IV allege that Sheriff Parker incarcerated Plaintiff in a cell with another inmate whom Sheriff Parker knew to be dangerously violent, thus violating Plaintiff's right to be free from an unreasonable seizure (Count III) and right to due process (Count IV).

In support of his Motion for Summary Judgement on Count III, Sheriff Parker contends that Count III is duplicative of Count IV and that the proper analysis for either claim is the Fourteenth Amendment to the United States Constitution – not the Fourth Amendment (Doc. 52 at 16, citing *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003). Plaintiff does not directly address the distinction but appears to concede the point (Doc. 65 at 9). Accordingly, Sheriff Parker is entitled to a judgment as matter of law on Count III.

With respect to Count IV, Sheriff Parker contends that Plaintiff has failed to adduce any evidence that he or his personnel were subjectively aware of a substantial risk of serious harm that Alsup posed to Plaintiff or that he failed to respond to such a risk. While Sheriff Parker admits that Alsup's inmate file contained five reports of incidents that occurred prior to the attack on Plaintiff, Sheriff Parker argues that Plaintiff never told him or his personnel that Alsup had threatened him or that Plaintiff feared Alsup (Doc. 52 at 17). Sheriff Parker also contends that Plaintiff has failed to adduce any evidence that the alleged constitutional violation under Count IV was due to a policy or custom (Doc. 52 at 19).

Plaintiff addresses the question of Sheriff Parker's subjective knowledge by noting, *inter alia*, that jail personnel questioned Plaintiff about Alsup's threats directly in Alsup's presence, immediately after the attack on Mr. Austin, and that Plaintiff was too intimidated to respond truthfully (Doc. 65 at 9). Plaintiff further notes that Alsup had attacked Mr. Austin the very morning of the same day that Alsup later attacked Plaintiff but that Sheriff Parker removed Mr. Austin from the bubble – not Alsup, who was the aggressor. Plaintiff does not address Sheriff Parker's contention that Plaintiff has failed to adduce any evidence that the constitutional violation was the result of a policy or custom.

Upon review, there is no genuine issue as to any material fact concerning Count IV. Plaintiff has clearly failed to adduce any evidence that the alleged constitutional violation was due to a policy or custom of Sheriff Parker, that Sheriff Parker acted with deliberate indifference to the constitutional deprivation, that Sheriff Parker delegated his authority to jail personnel who, in turn, caused the constitutional deprivation, or that Sheriff Parker ratified a constitutionally impermissible decision of one of his subordinates. *See*, *e.g.*, *Davis v. Williams*, No. 03-CV-1519, 2006 WL 3518605, at *3 (M.D. Fla. 2006) (citing *Sherrod v. Palm Beach County School District*, 424 F. Supp. 2d 1341, 1344 (S.D. Fla. 2006). While there may be sufficient circumstantial evidence regarding jail personnel's subjective knowledge of Alsup's violent propensity towards Plaintiff, Plaintiff has not sued (or even identified) any jail personnel – he has only sued Sheriff Parker in his official capacity. Because the doctrine of *respondeat superior* does not apply to §1983 claims, *see*, *e.g.*, *Engelleiter v. Brevard County Sheriff's Dept.*, 290 F. Supp. 2d 1300, 1380, and there is no evidence whatsoever that Sheriff Parker had any knowledge of Alsup or that the

alleged constitutional violation in this case was due to a policy or custom of Sheriff Parker, Sheriff Parker is entitled to a judgment as a matter of law on Count IV.

### 2. Counts V and XII against Sheriff Parker

Count V alleges that Sheriff Parker was negligent in placing Plaintiff in a cell with another inmate whom Sheriff Parker knew to be dangerously violent. Count XII alleges that Sheriff Parker negligently inflicted emotional distress upon Plaintiff by exposing him to attack by another cell mate.

In addition to his same arguments concerning lack of subjective knowledge with respect to Counts III and IV, Sheriff Parker argues that the "classification and placement of inmates within the prison system constitutes a discretionary planning level function...[and] therefore sovereign immunity applies" (Doc. 52 at 19, citing *Davis v. Dep't of Corr.*, 460 So. 2d 452, 453 (Fla. 1st DCA 1984)).

Plaintiff, on the other hand, contends that the care of inmates once in government custody is not a planning function, "but an operational function not subject to sovereign immunity" (Doc. 65 at 10, citing *Dep't of Health and Rehabilitative Servs. v. Whaley*, 574 So. 2d 100 (Fla. 1991) (holding that sovereign immunity did not apply to a sexual assault upon a juvenile detainee by fellow juvenile detainees)).

Upon review, Sheriff Parker is entitled sovereign immunity on Plaintiff's negligence claims. As the Florida Supreme Court noted in *Whaley*, "HRS' statutory duties toward children are, ultimately, the main difference between this case and prisoner cases such as *Reddish* and *Davis* [holding that sovereign immunity precludes prisoner's negligence claims arising out of attacks by other inmates], and we decide this case solely on HRS' duty, not the duty of any other

governmental agency." 574 So. 2d 100, 103 n. 1 (Fla. 1991). Consequently, Plaintiff's reliance on *Whaley* is misplaced.[4] Consistent with well-established Florida law, Sheriff Parker is immune to suit on Plaintiff's negligence claims. *See*, *e.g.*, *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010 (Fla. 1979); *Davis v. State*, *Dept. of Corr.*, 460 So. 2d 452 (Fla. 1st DCA 1984). Accordingly, Sheriff Parker is entitled to a judgment as a matter of law on Counts V and XII.

### 3. Count XII against Armor

Count XII alleges that Armor negligently inflicted emotional distress upon Plaintiff by exposing him to attack by another cell mate.

Armor contends that Plaintiff has failed to make any showing that it had any responsibility or involvement in placing Gross in the bubble (Doc. 49 at 18). Armor therefore argues that it had no duty to protect Plaintiff from exposure to an attack by another inmate.

Plaintiff responds by arguing that Armor knew that Alsup was refusing to take his medications, which it dispensed, and that it knew Alsup was becoming more crazed and agitated, but that it failed to report the "growing problem with Alsup to the Sheriff" (Doc. 66 at 12).

Other than Plaintiff's own averments, Plaintiff has adduced no evidence indicating that Armor knew Alsup was not taking his medication or that Armor knew Alsup was becoming increasingly more agitated. Even assuming, *arguendo*, that Armor had such knowledge, Plaintiff has failed to show that Armor had the authority, let alone the duty, to remove problematic or

---

[4]Plaintiff also relies on *Dunagan v. Seely*, 533 So. 2d 867 (Fla. 1st DCA 1988), in which the First District Court of Appeal held that a sheriff's failure to follow his own previously articulated policies of placing or confining inmates was an operational function that was not subject to sovereign immunity. 533 So. 2d at 869. In the instant case, however, Plaintiff has not alleged that Sheriff Parker or his personnel failed to follow their own policies or procedures for placing inmates. Accordingly, *Dunagan* is inapposite.

-13-

threatening prisoners from certain areas of the jail. Furthermore, Plaintiff has failed to produce any legal authority for the proposition that a failure to report a potential threat by a third party constitutes a breach of a duty that subjects one to liability for negligent infliction of emotional distress. Such nonfeasance has found little favor or recognition in the law of tort,[5] much less in the specific area of negligent infliction of emotional distress. Accordingly, Armor is entitled to a judgment as a matter of law on Count XII.

### B. Counts Pertaining to Plaintiff's Medical Care Following the Attack

#### 1. Counts VI and VII against Sheriff Parker

Count VI alleges that Defendants were deliberately indifferent to Plaintiff's medical needs, in violation of the Fourteenth Amendment to the United States Constitution, by denying Plaintiff access to medical care after he was attacked by Alsup. Similarly, Count VII alleges that Sheriff Parker was negligent in failing to provide Plaintiff with access to medical care after he was attacked.

Sheriff Parker argues that Plaintiff has failed "to demonstrate an objectively serious medical need as a result of the attack" or that Plaintiff did not receive adequate care after the attack (Doc. 52 at 21). Although Plaintiff initially had swelling to his right eye, Sheriff Parker further notes that Plaintiff did not suffer from any bruising, any change in vision, or dizziness immediately after the attack, and that eight days later Plaintiff had a healing contusion which did not require diagnosis or treatment by a physician (Doc. 52 at 21). Defendant also relies on the opinion of its

---

[5]*But see Tarasoff v. Regents of Univ. of Cal.*, 551 P.2d 334 (1976) and its progeny. Plaintiff, however, does not allege or adduce any evidence that Armor knew or should have known that Alsup posed a specific threat to Plaintiff.

expert, Dr. Joseph Smyth, who opined that Plaintiff's medical needs "were appropriately and professionally addressed following the altercation with inmate Eric Ashlup" (Doc. 52 at 22). Finally, with respect to Count VII, Sheriff Parker contends that Plaintiff failed to comply with the pre-suit screening requirements of FLA. STAT. § 766.106, which applies to claims arising out of medical negligence.[6]

Contrary to the record evidence in this case, Plaintiff contends that Sheriff Parker "provided no health care for [Plaintiff] once the injuries manifested themselves" (Doc. 65 at 16). Plaintiff further contends that his injuries were so "obvious that his mother and girlfriend broke down at the horror of viewing his injuries over a closed-circuit television the day after the attack" (Doc. 65 at 16). With respect to Count VII, Plaintiff does not address the pre-suit screening requirements of FLA. STAT. § 766.106 in his response to Sheriff Parker's Motion for Summary Judgment.

Upon review, there is clearly no genuine issue of material fact with respect to Counts VI and VII. Plaintiff has failed to adduce any evidence indicating that Sheriff Parker was deliberately indifferent to Plaintiff's medical needs or that Sheriff Parker was negligent, notwithstanding the pre-suit screening requirements of FLA. STAT. § 766.106, in depriving Plaintiff of access to medical care. On the contrary, the expert testimony provided by Sheriff Parker, as well as other substantial evidence in the record, demonstrates that Plaintiff received adequate medical care following the attack by Alsup. In the absence of any concrete medical evidence to the contrary, Plaintiff has failed to establish any constitutional violation or breach of duty under Florida

---

[6] The Court previously dismissed similar claims in earlier renditions of Plaintiff's Complaint for failure to comply with FLA. STAT. § 766.106 (*See* Doc. 29 at 5).

common law. Accordingly, Sheriff Parker is entitled to a judgment as matter of law on Counts VI and VII.

### 2. Count VI against Armor

Plaintiff has presented no additional evidence on Count VI with respect to Defendant Armor. Accordingly, for the reasons stated, *supra*, Armor is also entitled to a judgment of a matter of law on Count VI.

### C. Counts Pertaining to Plaintiff's Delayed Release from Jail

### 1. Counts VIII and IX against Sheriff Parker

Counts VIII and IX allege that Sheriff Parker failed to immediately release Plaintiff following a court order that Plaintiff be released upon a signature bond, thus violating Plaintiff's right to be free from an unreasonable seizure (Count VIII) and right to due process (Count IX).

Again, Sheriff Parker notes that Count VIII is duplicative of Count XI and that the proper analysis for either claim is the Fourteenth Amendment to the United States Constitution – not the Fourth Amendment. Plaintiff fails to address the distinction (Doc. 65 at 11). Accordingly, Sheriff Parker is entitled to a judgment as matter of law on Count VIII.

With respect to Count IX, Sheriff Parker contends that Plaintiff has failed to produce any evidence regarding precisely when Plaintiff was ordered to be released (Doc. 52 at 24). Notwithstanding the signature bond executed on August 10, 2006, there is no evidence establishing that Sheriff Parker or jail personnel had any knowledge of a court order requiring Plaintiff's release on August 10. Finally, Sheriff Parker argues that a twenty-four hour delay in an inmate's release has previously been held not to violate substantive due process rights (Doc. 52 at

24, citing *Case v. Eslinger*, 555 F.3d 1317 (11th Cir. 2009)) and that, even assuming that a constitutional violation did occur, Plaintiff has failed to establish that there was a policy or custom which was the moving force behind the violation.

Plaintiff responds that he and his girlfriend informed Sheriff Parker or his personnel that his bond had been posted and that, even if Sheriff Parker's computer system was not functioning properly, "all a Sheriff's employee would have had to do would have been to make a phone call or dispatch a courier to verify Ms. Parker and [Plaintiff]'s announcement" (Doc. 65 at 12). Furthermore, Plaintiff contends that the evidence demonstrates that Sheriff Parker was deliberately indifferent to Plaintiff's due process rights because "if the Sheriff will not phone or send a courier to its own bailiff or to the Court when it knows that a [release] order (or perhaps dozens of orders) is likely to have been issued...and the Sheriff knows that its computer is malfunctioning...such callous indifference rises to the level" of a constitutional violation (Doc. 65 at 12-13).

Upon review, there is no genuine issue of material fact with respect to Count IX. Plaintiff has failed to adduce any evidence that Sheriff Parker or any specific jail personnel had actual, or even constructive, knowledge of any court order requiring Plaintiff's release. Plaintiff has not alleged or even identified any specific jail personnel to whom he or Ms. Parker provided notice of his release order; nor has he introduced any evidence of the release order itself or when it was actually received by Sheriff Parker or his personnel. *See*, *e.g.*, *Rodriguez v. Broward Sheriff's Office*, 2007 WL 1222564 (11th Cir. 2007) (inmate who merely claimed that he was entitled to release and who had filed internal grievances and informed unnamed officers that he was entitled

to release failed to establish notice and was not entitled to relief for his delayed release);[7] *see also* *Kelly v. Curtis*, 21 F.3d 1544, 1552 (jailors do not have "a clearly established duty to ferret" out an inmate's claim that he is entitled to release). Accordingly, Sheriff Parker is entitled to a judgment as a matter of law on Count IX.

### 2. Count X against Sheriff Parker

Count X states a claim for false imprisonment under Florida common law arising out of Sheriff's Parker's failure to immediately release Plaintiff after court order. In addition to the fact that Sheriff Parker may be entitled to sovereign immunity on this claim, for the reasons stated, *supra*, Sheriff Parker is also entitled to a judgment as a matter of law on Count X.

### D. Count Pertaining to Plaintiff's Conditions of Confinement Within the Bubble[8]

Count XI alleges that Defendants negligently inflicted emotional distress upon Plaintiff by exposing him to unsanitary conditions while incarcerated within the jail's bubble.

### 1. Count XI Against Sheriff Parker

Sheriff Parker contends that Plaintiff has failed to produce any competent evidence that the conditions within the bubble where "negligent" and that Plaintiff's own lay opinion concerning the bubble's conditions is insufficient to create an issue of material fact (Doc. 52 at 25). Furthermore, Sheriff Parker argues that Plaintiff has failed to establish a necessary element of his claim for

---

[7] As an unpublished opinion, the Court recognizes that *Rodriguez v. Broward Sheriff's Office* is only persuasive authority within the Eleventh Circuit. 11th Cir. R. 36-2 and *I.O.P.*-6.

[8] Notwithstanding the allegedly horrific conditions and "Unsanitary & Tortuous [sic] Environment" (Doc. 65 at 13) within the bubble, Plaintiff does not allege that the conditions within the bubble violated any of his federal constitutional rights. Indeed, Plaintiff's only claim concerning the conditions within the bubble is his common law claim for negligent infliction of emotional distress.

-18-

negligent infliction of emotional distress: specifically, that Plaintiff sustained any impact or psychological trauma as a result of his confinement within the bubble.

Plaintiff responds by arguing that even the slightest of impacts will satisfy Florida's impact rule (Doc. 65 at 13-14, citing, *inter alia*, *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007). Here, Plaintiff contends that "the emissions from the bright lights [i.e., photons], even if the emissions are a force small or invisible and without immediate effect, still qualify as physical impact" (Doc. 65 at 14). Analogizing to a case involving electrical shocks, Plaintiff suggests that the "impact of light [which is made up of photons] is legally indistinguishable from that of electricity" (Doc. 65 at 15, citing *Clark v. Choctawhatchee Electric Coop., Inc.*, 107 So. 2d 609 (Fla. 1958)).

Upon review, no genuine issue of disputed material fact exists as to Count XI. Notwithstanding Plaintiff's novel photon argument, this Court is not prepared to rewrite Florida's impact rule. From the standpoint of quantum mechanics, Plaintiff correctly observes that millions photons "impacted" Plaintiff during his incarceration within the bubble. However, with the exception of his attempt to analogize electrocution to photon bombardment – an analogy the Court finds unpersuasive – Plaintiff fails to provide any legal authority adopting such an expansive approach to the impact rule. Furthermore, Plaintiff has failed to adduce any evidence that he sustained any specific psychological trauma as a result of his confinement within the bubble. Because Plaintiff has failed to produce any evidence that he sustained any impact or suffered any specific psychological trauma as a result of his confinement within the bubble, Sheriff Parker is entitled to a judgment as a matter of law on Count XI.

### 2. Count XI Against Armor

In addition to the fact that Plaintiff has failed to adduce any evidence that Armor had any responsibility for the conditions within the bubble, for the reasons stated, *supra*, Plaintiff has failed to produce any evidence that he sustained any impact or suffered any specific psychological trauma. Accordingly, Armor is entitled to a judgment as a matter of law on Count XI.

## V. Conclusion

For the foregoing reasons, it is **ORDERED** that the Motions for Summary Judgment (Docs. 49 and 52) filed by Defendants Armor Correctional Health Services, Inc. and Sheriff Jack Parker are **GRANTED**. The Clerk of the Court is directed to enter final judgments in favor of Defendants Armor Correctional Health Services, Inc. and Sheriff Jack Parker on all counts in Plaintiff's Second Amended Complaint and is further directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 2, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE